This is case number 4-16-0732, Onida Paul, plaintiff v. Walter Combs, defendant. Counsel, could you identify yourselves for the record, please? Kenneth Hogan, I'm here for the College Plaintiff's Enforcement Law. Brian Kovacs, I'm here for Walter Combs, defendant's lawyer. All right, thank you. Mr. Hogan, are you ready to proceed? I am. You may. Good afternoon. May it please the Court, Counsel. As I said earlier, I'm Ken Hogan. I'm here on behalf of the appellant, the plaintiff Onida Paul. We're here on appeal from the trial court's denial of plaintiff's post-trial motion, a motion for judgment to have a standard verdict or in the alternative, a new trial. Those motions were made in response to a not guilty verdict and judgment entered on the verdict, a negligence cause of action. Ms. Call's cause of action is alleged that Mr. Combs was negligent in operating his vehicle, caused physical injuries to her. Excuse me, Counsel. I couldn't gather this from either of the briefs. How did the accident happen? Just take me with plaintiff in this vehicle, defendant in this vehicle, directions, how they collided, where they collided. I do not exactly recall the directions in particular, but Onida Call had the right-of-way. It was proceeded into an intersection. Perhaps it was east-west. And Mr. Combs, he admits that he went through a stop sign, entered that intersection and collided with the driver's side rear quarter panel of the vehicle. And that's what I was getting to. There was a concession made prior to trial in this case of the defendant's negligent conduct that he had a duty of ordinary care. He breached duty. And in fact, his conduct was the approximate cause of the collision. So there were narrow questions for the jury, two of them, whether Combs' negligent conduct was approximate cause of injury to Call, and if so, the extent of her injuries and damages. The jury heard the testimony of the parties and two physicians, Dr. Narla, a treating physician testifying for the plaintiff, for Ms. Call, and Dr. Chopra, who was also another treating physician of the plaintiff, and he testified at the request of the defense. Dr. Narla and Dr. Chopra agreed that the medical treatment they provided to Ms. Call was reasonable and necessary medical treatment. Also that the other providers involved, there were others, St. John's Hospital, Springfield Clinic, I believe provided some physical therapy, were related. They also opined that they were related, that treatment was related to the May 2013 collision. They disagreed as to whether or not the plaintiff sustained a permanent injury. Dr. Chopra opined that she did not. Dr. Narla thought that there were still lingering effects and there were chronic effects from the collision and the injury she sustained. They didn't disagree, though, about the treatment she received between May, the May 15, 2013 collision, and September of 2013 when she basically completed her therapy. In fact, in closing argument, the defendant, counsel for the defendant, conceded that more than $3,000 in expenses were a reasonable response to the collision. Well, you say $3,000 in expenses. You mean a damage award in the amount of $3,000, not that there was $3,000 in out-of-pocket expenses incurred that the jury should award? That's correct, Judge. The expenses involved were the expenses related to an ER visit and also a follow-up with Dr. Chopra after an ER visit on the day of the collision and then a follow-up, I think, a week later with Dr. Chopra. It was conceded that that was the plaintiff's reasonable response to being in this collision. And, of course, the concession made earlier was that the collision was due to the negligent conduct of the defendant. Again, and I don't want to put too fine a point on this one aspect of it, what was said in closings in regards to the defendant's concession about the $3,000? I can actually call that up exactly because it's quoted. I think a reasonable response to this type of motor vehicle accident would be an emergency room visit and plaintiffs follow up with Dr. Chopra and those visits total $3,355.89. Who said that? That was the defense counsel in closing argument. So there's at least a concession. I think that's a concession. Is the jury required to accept it? Not required to, but in the absence of... In the absence of their accepting it, we should reverse? No, in the absence of any reason that they should not accept it, it's a concession from the other side, from the defense, that they are at least to that extent liable in this case. Well, what about if the jury hears other evidence that they find questionable or unbelievable as to that other evidence affecting their assessment of this first part? Why couldn't they just say, having heard all this, I'm not sure I believe anything? Would that be permissible? Well, I hope they didn't become so cynical that they wouldn't accept a concession from the opposing side. Well, no, the concession was our guy caused the accident, but the issue still is, to what extent was there real injury here and how much of it should be compensated, if at all? Our issue, our claims on appeal are not that there wasn't some sort of disagreement about the extent of the injury, or that the jury couldn't come to various conclusions about how much should be awarded, but it is that, at the very least, this seems to be an arbitrary and unreasonable rejection of a concession made by the defense. Well, put the concession aside, is it your position that the jury ignored unrebutted medical testimony connecting an injury on your client's part to the accident and medical expenses associated with the treatment of that injury? That is the broader point, Judge. Okay, so what was the unrebutted medical testimony? Both medical professionals who testified testified that, at least with respect to the medical expenses incurred between May 15, 2013 and September of 2013, that those expenses were reasonable and necessary and were incurred due to an injury that was caused by that accident. So there is at least that agreement between the only medical professionals. Well, didn't the jury ask for an itemization? They did. And as I understand it, per agreement of counsel in court, no such itemization was given to the jury. That's correct, Judge. And then they came back shortly thereafter with a zero, or not guilty. Twenty minutes later, yes. What about this as a thought, counsel? Dealing with the $3,000 concession and the whole business of verdicts, the concept of a motion for editor, typically that's in a, let's say, a more serious case than this, where $100,000 was the jury's verdict and the plaintiff says that really wasn't enough. It should have been at least $150,000. So you might have a motion for editor in effect saying, you know, Judge, if you give me, give my client $50,000 more, then we will accept that verdict and we won't be taking an appeal. Now, the other side might not agree to it, but at least that's one aspect of what you're trying to do. The issue before us is not was the $3,000 appropriate, the rejection of that, but you've raised two issues. One, we should reverse the denial of your motion for judgment on a B. The second is we should reverse the trial court's, failing that, we should reverse the trial court's denial of a motion for new trial. Now, if I'm the trial judge, and that's where all my sympathies lie, being a former trial judge, I'm thinking, well, you know, that $3,000 that the defendant conceded, I'm a little surprised and troubled by that. It seems to me that that's what the plaintiff should have gotten at a minimum, and I might be inclined to do that, but I, at the same time, don't think that I want to grant a new trial where we're doing this all over again and the plaintiff could ask for, how much was asked for in this case? Remind me. Closing argument. Ladies and gentlemen of the jury, you should return a verdict of what? Well, there were the $19,000 in medical expenses. Okay, well. There were additional expenses. Okay, so, I mean, we're talking about tens of thousands of dollars to be argued to the jury, so if I'm the judge, I'm thinking, well, maybe I should give them $3,000, but I'm not asked to do that. My only relief is to give them a new trial entirely. So, the reason I'm bringing this up is, even if we think the jury's decision with regard to that $3,000 is suspect, that's really not enough for us to reverse, is it? We have to look to the, really, only request you made, which was, after the motion for judgment will be denied, new trial or nothing. I think the concession in closing is, I think there's more significance to it than simply whether or not, at a minimum, that they were conceding $3,000 in medical expenses. It was, it shows that the jury's verdict is simply unreasonable. Well, actually, yes and no. It shows, it's a strong argument, given the concession that $3,000 should be, that would be appropriate, strong argument that their rejection of that $3,000 verdict was unreasonable and that they should at least have done that since that was conceded, but I'm not sure that that constitutes much in the way of a basis to argue that the rejection of anything greater than $3,000 was unreasonable. Yet, that's what you'd have us conclude. Well, the relief we would be seeking would be a reversal here, would mean the judgment would be entered on liability, that there would be this judgment on liability. And go back and have a new trial on damages. On damages, correct. Well, but that means we'd have to second-guess the jury, not just on this $3,000, but on everything. And the evidence beyond the $3,000 seems to be in dispute, isn't it? Isn't there, I mean, there's some medical testimony that, you know, this is, you know, maybe some pre-existing conditions you had. I think ultimately, the plaintiff's response to that is that a concession that there's, essentially that there's liability, some level of liability at least, some degree of damage here, that makes the jury's, you know, not guilty verdict denying all recovery whatsoever arbitrary and unreasonable. If that seems to be... Well, so you're suggesting that if they return the verdict for the $3,000, which the defense asked, you wouldn't be here? I don't know whether, again, you mentioned a motion for editor. Call me skeptical. I think you'd be here anyway, counsel. It's quite possible, Judge. But, and again, I really, I mean, part of our argument is concerning the concession closing argument. But it isn't the sum of our argument. It's true. In terms of the concession, again, going back to that, I just want to nail this down. Did defense counsel say, when you retire to the jury room, we think an award of X amount would be appropriate? Or did the defense attorney say, we think you should come back with, find the defendant not guilty. But if you do make an award of damages, an award of X amount might be reasonable. Did they have an either or argument? No, Judge, the comment that we're highlighting as a concession regarding $3,000 is just what I recited earlier. It doesn't go beyond that. That is the quote. I think a reasonable response to this type of motor vehicle accident would be an emergency room visit and calls follow-up. I'm sorry, I believe it's plaintiff in the original. I have it in brackets. Follow-up with Dr. Chobra. And those visits total $3,355. Counsel, you said defendant conceded liability. But did defendant concede liability or negligence? Because there might be a distinction there. What the defendant conceded, in my view, is negligent conduct, which is they had a duty, that he breached the duty. And he also conceded part of probable cause, which is probable cause for the collision. But he did not concede probable. Proximate cause. I'm sorry, proximate cause. Proximate cause. He did not concede the proximate cause of any injury to the plaintiff. I'm just curious because the jury instruction, that I assume looks like it's IPI and I don't think anyone objected to it, implicates that the negligence of the defendant was the proximate cause of the injury. And the defendant nevertheless testified that his brakes failed. I'm just thinking that the jury might have thought, well, it really wasn't his negligence which was the proximate cause of that injury. Because that jury instruction could have said the accident was the proximate cause of the injury. Do you think there's any possibility that's why the jury would have come back with nothing? Because the defendant apparently did testify that his brakes failed. And it would seem to me maybe that shouldn't have gotten from the jury if he was already saying I was negligent. I'm just speculating. I did not try the case, Judge. And quite frankly, reading the record, I was a little surprised there was testimony on any aspect of the brakes failing, that sort of thing. However, it did have some significance, still, because of whether this was a significant collision. That would have some impact on the jury finding as to the believability of the damages, the believability of the injuries. And there was some dispute between the parties about that. Although the defendant conceded that he'd seen the plaintiff's car afterwards and he thought the axle was broken. It seemed like, again, no expert testimony on it, but it seemed like maybe a collision that may have occurred at more than 10 miles per hour. Well, if you don't see any problem with the jury instruction, would that be a correct response to the inquiry? I don't think there was an error in the jury instruction. Typically, in a case like this, if there's, I'm going to call it admitted negligence, the court would instruct the jury in regards to the admission of negligence to take that issue off the table for the jury. Did the court instruct the jury in regards to the defendant's admission of negligence? As I recall, Judge, there was some statement at the beginning by the court. But I don't have that quoted in my brief and I don't recall exactly what it was. But they did not go blind into this trial and then were after instructed, simply given that concession. Getting back to Justice Stein's question from a few minutes ago about itemizing what the request was for damages, was there a separate line for permanent injury? Because that's where there was a divergent view between the experts, whether the injury was permanent. That's where the two doctors did not agree. That's correct. Okay, well, I'm just asking, what exactly was requested? I'm sorry, I don't recall that. I'm just wondering if the jury thought that permanent injury had to be shown in this case. I think if they read the instructions, they wouldn't think that. Well, what did the instructions say? The instruction on proximate cause talks about it doesn't have to be the sole or only cause for an injury. There was discussion about injury. Proximate cause instruction doesn't have anything to do with whether or not an injury is temporary or permanent. It just has to do with the fact that it doesn't need to be the last or nearest cause. It's sufficient if it's a cause. Justice Turner is asking about the issue of permanency. Whether or not there was, there has to be evidence of permanent injuries, I think, in order for the jury to be required to make an award here. But nothing to say that it could just be temporary injuries. The jury could still make an award for that, right? Yes, Judge. There's still, whether it's permanent or not, there's still, there was testimony, there was evidence of certainly injury. My question is, was the jury aware of that? I guess we don't know. Yes, Judge, and I apologize, Judge. I have not, I did not review the jury instructions recently. I don't recall. I don't want to say anything that's inaccurate, but I believe there was a line for permanent injury, but I can't say for sure. Mr. Hogan, you're out of time, but you'll have time in the rebuttal. Thank you, Judge. Thank you. Mr. Kovacs. Many of my points I want to bring up today were brought up in the questions that the panel asked here. I just want to point out a couple of the key issues that we pointed out in our brief. As was brought up, there was a concession of negligence causing the collision, but there was no concession, and the jury must ultimately decide if the breach, the negligent act, was the proximate cause of her injuries, of Ms. Call's injuries.  They're tasked with hearing all the evidence and testimony and making decisions about credibility and about the believability of the witnesses and the relevant doctors in this matter, and they hear all that testimony. Was there unrebutted medical testimony that plaintiff suffered an injury in the accident and that identified the medical expenses associated with the care for that injury? Your Honor, my understanding is that the doctor who was the defense, the doctor who testified on behalf of the defense, Dr. Chopra, had testimony, as we point out in our brief, that would have rebutted some of the testimony of a plaintiff's doctor such that she didn't suffer a serious injury. She didn't suffer a permanent injury. There was no medical pain or disc problem in her back. That's the kind of testimony I believe that the jury can take and render a decision deciding whether or not they actually thought she suffered an injury that was the... Any injury? The proximate cause of this accident? I mean, there's a testimony that she didn't suffer a serious or a permanent injury. I think the jury... No, those are two different things. You know, you can't say that what's necessary in order to recover damages in the state of Illinois is medical testimony, that it was either a serious or permanent injury. That's not the state of the law. I understand that, Your Honor. And the doctors did testify, both doctors I believe testified, that their initial treatment, they believe, was reasonable and necessary and was related to the accident. So how could a jury disregard the unrebutted testimony, then? Was there something else that you can point to here that constituted credible evidence sufficient to allow the jury to award nothing? The jury hears the evidence from plaintiff and defendant and the doctors. They're the ones tasked with understanding the credibility. This is a low-speed collision, 5 to 10 miles an hour. Testified on both sides, 5 to 10 miles an hour. That's a low-speed impact. There's no airbag deployment. The impact is to the rear of the plaintiff's car. The jury can take that, using a real-world assessment of that, and determine was this collision the approximate cause of what injury she's claiming, and determine that it was not. Determine this is a low-speed impact. There are no injuries that are related to this accident. Do we have a case law that says that the jury can do that? I don't have any in front of me today, Your Honor. I'm sorry. I think our main contention in this matter is questions regarding approximate cause of plaintiff's injuries are reserved for the trier effect, the jury. The jury is the one who's there in person to make these assessments of credibility and reliability of the witnesses and assessments. What about this issue of the closing argument? What did defense counsel say in regards to what the jury should do in the way of an award? As counsel pointed out, the defense counsel in the case gave an option to the jury. If you believe that she's injured from this accident, an appropriate award might be the emergency room in this first visit. Was that how it was phrased? If you believe the plaintiff was injured in this accident? I don't have that brief in front of me. I believe counsel quoted it exactly.  Whether or not that leads to the jury's mind, if that gives them an option of saying, well, we just don't believe that that emergency room visit and the first doctor visits are related, it's impossible for me to say that. I don't see how a jury could unreasonably make that decision. I believe a jury could reasonably make that decision based on the evidence. And succinctly just identify the evidence that would allow the jury to reach the conclusion that the plaintiff was not injured in light of the medical testimony that she was injured. I think real-world testimony about speed of the impact, low-speed impact, where it happened on her car, no airbag deployment for her car, it's reasonable to consider that a jury of the plaintiff's peers could decide that they don't believe that she suffered an injury that was the approximate cause of that impact. Wasn't the evidence that the impact broke the axle? I don't know if there was photographic evidence of that, it might have just been testimony of someone's opinion in the matter. I know that the testimony was that it was a low-speed impact to the rear quarter panel of a car, not a direct T-bone side hit or anything like that. So, you know, the position of our, of the appellee's brief in this matter, is that the jury ultimately rendered their decision. Unless there's manifest way of the evidence that somehow that was an unreasonable decision or arbitrary, I don't believe there is that evidence in this case. I believe that the jury was tasked with determining whether or not the negligence of the defendant was the approximate cause of the plaintiff's injuries. And I think it's instructive that they asked the court for the itemization of the bills. And plaintiff's counsel had an option at that point to say, yes, here are the itemized bills for you to consider so we can show you how injured she was. Plaintiff's counsel took the trial strategy of saying, no, I'm not going to present those bills. And the jury came back and said what they said, said there's no damages in this matter. It seems to me in this matter that the plaintiff's counsel is almost regretting their trial strategy at that point and then coming back later saying that the jury's decision was arbitrary, unreasonable, not related to the evidence. And I don't believe that to be true. I believe there's enough evidence that the jury could have considered from the testimony, especially of the doctors, that a verdict for the defendant for damages of zero is at least reasonable and not against the manifest way of the evidence, which is the standard. This was soft tissue injury kind of thing that she complained of? Yeah, I believe it was low back, soft tissue injuries. Was there ever any, like, better way to put it, independent medical support by extrinsic testimony showing an injury? I don't believe there was. I don't believe there was an independent medical examination or anything like that, if that's what you're asking. No objective evidence? No, see, it's right there. No objective evidence. It's not extrinsic. So it was essentially I was in this accident and I hurt. She made subjective complaints to her doctors, yes. Counsel, Justice Harris has asked this a couple times. I'm not sure if you ever responded precisely or explicitly. If there is unrebutted medical testimony, can the fact finder ignore that and use their case law that says that, or says the opposite for that matter? And I would apologize to the Court. That is not something that I researched in anticipation of this, so I can't give you an answer. I don't want to tell you one way and be wrong, so I have no answer to that question. I don't know the answer either, but something in the back of my old mind or brain seems to suggest that I've read that someplace along the line in my years either on the bench or in practice. Again, I apologize. I don't have an answer to give you right now. I appreciate that. How should we view the concession of defense counsel and close their argument with regard to this business about, well, maybe you should come up with a $3,300 verdict for the ER and her initial examination? I would argue I view that as a factor for the jury to consider. Whether or not they take that to the bank and say, well, let's give her that exact amount, whether they give her something or not, it's a factor for the jury, who's weighing the credibility of the testimony and the witnesses, to consider. It's not beholden upon them to give that exact amount. In fact, they're asking the other attorney to give a much larger amount. So the determination is put on the jury to make some decision. Refresh my recollection again. How much was the plaintiff asking the jury to put in their verdict? I knew that question was going to come because you asked it to the other counsel, and I also did not try the case, so I don't. That evidence did not make it to the trial brief that I had, so I don't know the amount they asked for. Well, wasn't that a recommendation made in closing argument? Ladies and gentlemen, for all these reasons, my poor client, I mean, Nicole, you should return a verdict of X dollars in recompense for her. I can't answer that because I don't know that for this case. Every other case I've tried, that always happens. So I'm sure the answer is yes, but what that number was, I can't give you today. I apologize. Well, do you know if she asked for pain and suffering? I don't know that answer. You don't know that either? I would assume, based on the fact she had, I think it was $19,000 plus in medical bills, my understanding is she asked for an amount that would reflect her medical treatment, loss of normal life, pain and suffering. The exact quote from the trial I don't know, and I can't give you that answer exactly, but that's my recollection of this. All right. Thank you. Mr. Hogan, rebuttal argument? Just briefly, Your Honor. There was a question regarding defendants, the speed of the collision. The person who suggested or had testified that the axle was broken was, in fact, the defendant. And as to the decision not to send an itemized list of medical expenses to the jury, to my understanding that was an agreement of counsel. There's nothing in the record that certainly contradicts that, and ultimately it was the trial court's decision as to how the jury was to be properly instructed. And we're not taking, certainly that was, we can't take issue with that. We supported the trial court's decision in the circuit court to do exactly what the trial court did. But I don't think that deprives us of a cause of action if the jury otherwise acts in an arbitrary way by rejecting, essentially rejecting a concession of the defense, which has the implication that there should be a logical implication that there should be some liability, at least. To just render a guilty verdict seems to me to qualify, or at least is highly suggestive that this was an arbitrary and unreasonable verdict. I did also notice that there was mention of a disc problem, and I believe the testimony was that she had not complained of any disc degeneration prior to the accident, and that while some disc degeneration was discovered in an MRI, that the testimony was that trauma can make pain from disc degeneration go from asymptomatic to symptomatic, that the trauma can trigger the pain, and that prior to the trauma it can be asymptomatic where the person is not suffering any pain. Also, I just want to address Dr. Chopra's testimony. It's highlighted over and over again in the Appellee's brief about there being, it's not being a serious injury. I believe if you look, if you read that testimony, his video deposition testimony, that that is, if you read in full context, the serious, that was his initial impression. He did refer her to a specialist. He referred her to testing. He testified that she suffered injury as a result, ultimately, suffered injury as a result of the collision that occurred in May of 2013, and he disagreed with Dr. Narla on how permanent that was and whether that constituted a permanent injury, but he certainly didn't testify that she didn't suffer the injury, and again, that testimony regarding serious injury is an initial impression. Unless there are any more questions, I will move on. I don't see any questions. All right. Thank you. Thank you. Thank you both. The case will be taken under advisement in a written decision.